[No. F003171. Fifth Dist. May 14, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE WOOTEN, Defendant and Appellant.

**COUNSEL**

Gary Cooper and Franz E. Miller for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BEST, J.**—Defendant appeals from his conviction of violating Penal Code sections 12025, subdivision (a), carrying a concealed weapon upon one's

person (count I), and 12025, subdivision (b), carrying a concealed weapon in a vehicle (count II). His contentions are (1) the trial court erred in denying his motion to suppress, (2) his vehicle constituted his "place of business" within the exception provided by Penal Code section 12026 or, alternatively, (3) Penal Code section 12026 is unconstitutionally vague. We reverse the judgment.

## FACTS

On April 19, 1983, at approximately 2 a.m., Deputy Neil Record of the Kern County Sheriff's office observed a pickup truck traveling at a speed greater than the 55 miles per hour limit. He followed the pickup in his patrol car and clocked the speed of the pickup at 65 miles per hour. He also saw the pickup on three occasions drift over the centerline of the roadway two to three feet and then suddenly jerk back into the right hand lane. He suspected that the driver of the pickup was intoxicated so he turned on his red light and directed his white spotlight into the rear window of the pickup. He noted that both the driver and passenger were moving back and forth inside the pickup and thought they were trying to get rid of whatever was causing them to be intoxicated. A California Highway Patrol unit was following Deputy Record and stopped behind the sheriff's vehicle after the pickup had stopped. California Highway Patrol Officers Williams and Chambers walked up to the pickup while Deputy Record was advising his dispatcher of the stop. He then got out of his patrol car, walked up to the driver's side of the pickup, and recognized defendant from an intelligence flyer that the Kern County Sheriff's office had received from the San Bernardino County Sheriff's Department. The flyer had named defendant as part of a group involved in auto theft, narcotics, weapons, explosives and possibly murder. Deputy Record then directed the defendant to step out of the pickup in order to conduct a pat-down search for the safety of himself and the other officers. During the pat-down search, defendant was found to be wearing an empty shoulder holster, a fixed blade knife in a sheath on his belt and a loaded .38 caliber automatic pistol in a clip holster inside his left boot. After placing defendant under arrest for carrying a concealed weapon on his person, Deputy Record searched inside the cab of the pickup and found underneath the driver's seat six live .38 caliber cartridges. Defendant stated that he had a handgun in the glove compartment and, upon opening the glove compartment, Officer Williams found an unloaded .38 caliber Smith and Wesson revolver and a .38 caliber AMT automatic pistol with one round in the chamber.

Defendant's motion to suppress all of the handguns pursuant to Penal Code section 1538.5 was denied, the trial court ruling that *Whiteley* v. *Warden* (1970) 401 U.S. 560 [28 L.Ed.2d 306, 91 S.Ct. 1031], *People* v.

*Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971] and *People v. Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689] did not apply to "pat-downs," so that no evidence was presented by the prosecution to substantiate the information contained in the San Bernardino intelligence flyer. Plaintiff concedes that this ruling was erroneous.

Defendant waived trial by jury and the case was submitted to the court on the preliminary hearing transcript and defendant's testimony. Defendant admitted owning and possessing the weapons and testified that they were for self-protection in the course of carrying on his business as a "bounty hunter." Documents authorizing defendant to act on behalf of a bonding company to arrest and return to court two persons who had jumped bail were introduced into evidence. Defendant testified that he and his passenger, who was his "backup," were on their way to find one of the bail jumpers at the time of his arrest. Defendant admitted that he did not have a permit to carry a concealed weapon.

## DISCUSSION

### I

*A hearing on the sufficiency of evidence supporting the "flyer" must be held*

We choose to accept plaintiff's concession that the trial court erroneously failed to apply *Harvey-Madden* principles to the "flyer" that motivated the pat-down of defendant. This error, however, does not compel outright reversal. (*People v. Bustamante* (1981) 30 Cal.3d 88, 103 [177 Cal.Rptr. 576, 634 P.2d 927].) The cause should be remanded to the trial court for a hearing on the *Harvey-Madden* issue. If it determines that probable cause supports the flyer, it should reinstate the judgment. If not, it should order a new trial or dismiss the case.

### II

*Defendant's vehicle was not his "place of business" within the meaning of Penal Code section 12026*

Defendant claims that his "place of business" as a bounty hunter was his vehicle, so Penal Code section 12026[1] should compel reversal of

---

[1]Penal Code section 12026 reads: "Section 12025 shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this State, and who is not within the excepted classes prescribed by Section 12021, from owning, possessing, or keeping within his place of residence or place of business any pistol, revolver, or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess, or keep any such firearm at his place of residence or place of business shall be required of him."

his conviction for carrying a concealed, loaded weapon in his truck's glove compartment. He relies upon *People* v. *Marotta* (1981) 128 Cal.App.3d Supp. 1 [180 Cal.Rptr. 611] holding that the Penal Code section 12026 "place of business" exemption applied to a taxicab.

We first note that *Marotta* is readily distinguishable. While taxicab drivers must do business in their cabs, bounty hunters do not. Their job is to get out of their car and arrest bail jumpers, not to run over them. The vehicle is simply a means to transport the bounty hunter. Unlike a taxi driver whose work cannot be done without a vehicle, bounty hunters may leave their own cars behind and use airplanes, buses, trains or taxis to pursue bail jumpers.

Second, the reasoning of the *Marotta* court is not persuasive. The clear legislative purpose of section 12025 is to prohibit the carrying around of concealed weapons. Section 12026 provides an exception for possession in one's residence or place of business. The natural meaning of the term "place of business" is a fixed location, simply because almost all businesses are conducted in some office, store or other building. When a business is mobile, one generally says that the business is not conducted in any particular place, but in an area. Giving Penal Code section 12026 the broad meaning advocated by defendant would render it meaningless. Salesmen, truck drivers, delivery persons—in short, anyone whose business puts them in transit—could use section 12026 to justify an exemption from section 12025. The obvious result would be that even convicted felons (other than those specified) could easily set themselves up as traveling salesmen and carry a concealed weapon in their car with impunity. This would frustrate the obvious legislative purpose of section 12025. (Cf. *People* v. *Foley* (1983) 149 Cal.App.3d Supp. 33 [197 Cal.Rptr. 533].) ▮ We are required to construe penal statutes according to the fair import of their terms, to effect their objectives and promote justice. (Pen. Code, § 4; *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 487-488 [134 Cal.Rptr. 630, 556 P.2d 1081].) ▮ Construing Penal Code section 12026 to treat defendant's pickup truck as a "place of business" simply because he worked as a part-time bounty hunter would not serve any of these ends.

### III

*Penal Code sections 12025 and 12026 are not unconstitutionally vague*

▮ Defendant, following dicta in *People* v. *Marotta, supra,* 128 Cal.App.3d Supp. 1, contends that Penal Code section 12026 is "void for vagueness" if it does not exempt bounty hunters from section 12025. ▮ The California Supreme Court recently summarized the "void for vagueness" doctrine in connection with the .10 blood alcohol content standard:

"Both article I, section 7, of the California Constitution and the Fourteenth Amendment to the United States Constitution declare that no person shall be deprived of life, liberty or property without due process of law. It has been recognized for over 80 years that due process requires inter alia some level of definiteness in criminal statutes. (Note, *Due Process Requirements of Definiteness in Statutes* (1948) 62 Harv.L.Rev. 77, 77, fn. 2.) Today it is established that due process requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. [Citations.]" (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732], cert. den. 466 U.S. 967 [80 L.Ed.2d 812, 104 S.Ct. 2337].) In a footnote, they point out that: "The United States Supreme Court recently observed that '[a]lthough the [void-for-vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement."'" (*Burg, supra,* at p. 269, fn. 15, citing *Kolender* v. *Lawson* (1983) 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855, 1858].)

 Penal Code section 12026 does provide clear guidelines for law enforcement. Approached in a common sense manner, any reasonably intelligent policeman can tell when he is in a residence or place of business. If we were to broaden "place of business," this quality would be lost. An officer would have to inquire into the vehicle operator's business and evaluate the necessity of the vehicle to that business.

The "actual notice" wing of the void-for-vagueness analysis is also satisfied. This court explored this part of the vagueness analysis in *People* v. *Apodaca* (1978) 76 Cal.App.3d 479, 486 [142 Cal.Rptr. 830]: "It is fundamental that all citizens of a free state must be informed as to what the state commands or forbids, and that no one should be required at peril of life, liberty or property to speculate as to the meaning of the state's penal statutes (*Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, 453 . . .; *Findley* v. *Justice Court* (1976) 62 Cal.App.3d 566, 570 . . .); fairness alone requires that no man be held criminally responsible for conduct he could not reasonably understand to be proscribed (*United States* v. *Harriss* (1954) 347 U.S. 612, 617 . . .). Accordingly, a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must guess at its meaning and could differ as to its application, does not give fair notice as to the forbidden conduct and lacks an essential ingredient of due process of law. (*Connally* v. *General Construction Co.* (1926) 269 U.S. 385, 391 . . .; *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 . . . .)" A person of "common intelligence" does not have

to guess at the meaning of Penal Code section 12026. Anyone reading its terms would see that its exemption for residences and places of business does not extend to the vehicle used by every businessman who must travel in the course of his business. Defendant's use of a dictionary definition of "place" as "an indefinite region or expanse" does not invoke any vagueness that would be perceived by a person of common intelligence. This use applies to large places—for example, California is a "place." Does this mean that anyone who does business in California can carry a concealed weapon anywhere in the state because it is his "place of business"? Of course not. The phrase, "place of business" has a narrower meaning than each of its component terms. It is used to describe stores, offices, warehouses, etc. where business is conducted. These are not indefinite expanses and are not mobile pieces of personal property.

The judgment is reversed and remanded for a hearing on the basis of the "flyer" described above.

Hanson (P. D.), Acting P. J., and Woolpert, J., concurred.